UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GALEANA TELECOMMUNICATIONS
INVESTMENTS, INC.,

    Plaintiff/Counter-Defendant,

v.

Case No. 15-cv-14095

HON. MARK A. GOLDSMITH

AMERIFONE CORP.,

    Defendant/Counter-Plaintiff,

and

FIRST INTERNATIONAL EXCHANGE
GROUP, INC., et al.

    Defendants.
_____/

# OPINION & ORDER
# (1) GRANTING DEFENDANTS AMERIFONE AND BEYDOUN'S MOTION FOR SUMMARY JUDGMENT (Dkt. 88); (2) GRANTING DEFENDANT OSEFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 83); (3) GRANTING DEFENDANTS DALALY AND FIEG'S MOTION FOR SUMMARY JUDGMENT (Dkt. 87); (4) DENYING PLAINTIFF/COUNTER-DEFENDANT GALEANA'S MOTION FOR SUMMARY JUDGMENT AGAINST AMERIFONE AND BEYDOUN (Dkt. 85); AND (5) DENYING PLAINTIFF GALEANA'S MOTION FOR SUMMARY JUDGMENT AGAINST DALALY AND FIEG (Dkt. 90)

This matter is before the Court on five motions for summary judgment filed by the parties. Defendants Amerifone Corporation ("Amerifone") and Issam Beydoun have filed a motion for summary judgment regarding Plaintiff Galeana Telecommunications Investments, Inc.'s ("Galeana") claims of breach of contract, fraud, and concert of action (Dkt. 88). Defendant Harold Oseff has filed a motion for summary judgment on Galeana's claims of fraud and concert of action (Dkt. 83). Defendants First International Exchange Group, Inc. ("FIEG") and Dhafir Dalaly have

also filed a motion for summary judgment regarding Galeana's fraud and concert-of-action claims (Dkt. 87).

In turn, Galeana has filed a summary judgment motion, both as Plaintiff and Counter-Defendant, against Amerifone and Beydoun (Dkt. 85). As Plaintiff, Galeana seeks summary judgment on its breach-of-contract, fraud, and concert-of-action claims. As Counter-Defendant, Galeana seeks summary judgment on Amerifone and Beydoun's fraudulent inducement claim. Galeana has also filed a motion for summary judgment on its fraud and concert-of-action claims against FIEG and Dalaly (Dkt. 90).

The issues have been fully briefed, and a hearing was held on September 28, 2017. For the reasons discussed below, the Court grants the motions of Amerifone, Beydoun, Oseff, FIEG, and Dalaly, and denies Galeana's motions.

## I. BACKGROUND

Galeana is a telecommunications investor and the parent company of MetroBeam Wireless Telecommunications ("MetroBeam"), which also operates as Kulacom Jordan ("Kulacom"). Amerifone Mot. for Sum. Judg. ¶¶ 2-3. Fouad Alaeddin ("Fouad") is the majority owner of Galeana, and Hazim Alaeddin ("Hazim") is both the CEO of MetroBeam and Galeana's managing director. Id. ¶¶ 4-5.

Issam Beydoun is an officer and shareholder of Amerifone, which invests in the telecommunications industry. Id. ¶ 1. Harold Oseff was a shareholder at Seyburn Kahn, a Michigan law firm. Oseff Mot. for Sum. Judg. ¶ 7. After Beydoun hired Seyburn Kahn to incorporate and represent Amerifone, Oseff also served as Amerifone's attorney, secretary, and general counsel, all without receiving pay. Id. ¶¶ 7-8. Dhafir Dalaly is the owner of FIEG, a financial services company. Id. ¶¶ 28. Dalaly also owned Atlantic Bank. Id. ¶ 29.

MetroBeam provided broadband services in the Kingdom of Jordan, but those services became less commercially viable after the introduction of 3G and 4G services in the country. Id. ¶¶ 3-4. As a result, Galeana decided to pursue a license to provide 3G and 4G services. Id. ¶ 5. After some communication between Galeana and Amerifone, Oseff, at Kulacom's request, wrote a letter dated June 26, 2012 to Hazim. Id. ¶ 17. The purpose of the letter was to persuade Jordan's Telecommunications Regulatory Commission ("TRC") to issue a 3G license. Amerifone Mot. for Sum. Judg. ¶ 20. The letter explained that Amerifone's U.S. investors "have indicated that they desire to have the opportunity to invest up to USD $100,000,000 in companies with bona fide telecommunications licenses[,]" but that those investors did not want to fund the investments until Kulacom had obtained a 3G license; the letter further explained that the identities of the investors could not be revealed due to non-disclosure agreements. Oseff Letter, Ex. 8 to Amerifone Mot. for Sum. Judg. (Dkt. 88-9).

On December 6, 2012, Jordan announced that it would accept bids for a 3G and 4G license. Oseff Mot. for Sum. Judg. ¶ 41. Galeana and Amerifone began negotiating a stock purchase agreement for the purchase of Kulacom shortly after this announcement; the parties executed the agreement on January 8, 2013. Id. ¶¶ 42, 44. The agreement had multiple conditions precedent; notably, the TRC's acceptance of the licensing bid was a precondition to closing. Purchase Agreement, Ex. 12 to Oseff Mot. for Sum. Judg., ¶ 4.2 (Dkt. 83-13). If the conditions precedent were met, Amerifone would purchase MetroBeam for $40 million. Id., ¶ 3. A subsequent amendment to the agreement, entered on September 3, 2013, shifted some contractual responsibilities to Amerifone. Amendment to Purchase Agreement, Ex. 14 to Oseff Mot. for Sum. Judg., ¶ 1 (Dkt. 83-15). For example, Amerifone – not Galeana – would be responsible for submitting the bid to the TRC in a manner acceptable to the TRC. Id. At some point during these

3

negotiations, Amerifone apparently told Galeana that part of the funding for the bid would come from a settlement of a lawsuit in Lebanon, see Fouad Email to Oseff, Ex. 15 to Amerifone Mot. for Sum. Judg. (Dkt. 88-16), though the record is sparse on details regarding the details of that supposed promise.[1]

Both Amerifone and MetroBeam submitted bids for a telecommunications license: Amerifone for ninety million Jordanian Dinars ("JD") (approximately $127 million) and MetroBeam for seventy million JD (approximately $99 million).[2] Amerifone Mot. for Sum. Judg. ¶ 55. Amerifone's bid included a guarantee of fifteen million JD from Atlantic Bank, Oseff Mot. for Sum. Judg. ¶ 56, even though Atlantic Bank had previously been ordered by the State of Michigan to cease and desist doing business as a bank due to money laundering activity,[3] Galeana Mot. for Sum. Judg. against FIEG, ¶¶ 5-6 (Dkt. 86). Upon submission of the bids, the TRC alerted Amerifone that its submission was unacceptable and requested that the bid bond come from a Jordanian bank or that a letter of credit be submitted in a form acceptable to a Jordanian bank.

---

[1] In its brief for summary judgment against Amerifone and Beydoun, Galeana merely claimed that Amerifone promised it "would have more funds available from settlement of a Lebanon lawsuit" to provide funding for the project. Galeana Mot. for Sum. Judg. against Amerifone at 3-4. Galeana provides no citation to the record explaining the details of the promise or the nature of the suit, beyond claiming, without pointing to the record, that "this appears to be a pattern of activity and behavior by Defendants to convince some international authority to buy into their fake financing from a fake bank." Id. at 12.

[2] Fouad explained at his deposition that both companies, despite their cooperation, submitted bids because MetroBeam had lobbied the Jordanian government and the companies both thought it appropriate that each submit a bid. The companies intended, however, for Amerifone to win the bid, and thus Amerifone bid a higher amount. Fouad Dep., Ex. 1 to Amerifone Mot. for Sum. Judg., at 92-93. (Dkt. 88-2).

[3] The cease and desist order, adopted by Michigan's Office of Financial and Insurance Regulation, was entered pursuant to the Banking Code of 1999, Mich. Comp. Laws § 487.1101 et seq., which grants the commissioner of that office the authority to enter such orders, Mich. Comp. Laws §§ 487.12304, 487.12305.

4

Galeana Mot. for Sum. Judg. against Amerifone ¶ 5 (Dkt. 85). Ultimately, the TRC awarded the license to a third provider, a company called Zain, based on its bid of 160 million JD (approximately $225 million). Amerifone Mot. for Sum. Judg. ¶ 61. After the bid was awarded to Zain, the chairman of the TRC left the Commission to become a consultant with Zain. Id. ¶ 63.

Galeana filed suit in November 2015, asserting a breach of contract claim against Amerifone and various misrepresentation claims against Amerifone, FIEG, Beydoun, Oseff, and Dalaly. In an August 2016 opinion, the Court dismissed several of the claims. See Galeana Telecommunications Investments, Inc. v. Amerifone Corp., 202 F.Supp.3d 711 (E.D. Mich. 2016). Galeana's only remaining claims are breach-of-contract and fraud claims against Amerifone and Beydoun, its fraud claim based on the June 2012 letter against Oseff, various fraud claims against Dalaly/FIEG, and a concert-of-action claim against all parties. Also remaining is Amerifone's counterclaim for fraud against Galeana.

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

## III. ANALYSIS

### A. Amerifone and Beydoun Motion

Three Galeana claims remain active against Defendants Amerifone and Beydoun: breach of contract, fraud, and concert of action. Amerifone and Beydoun seek summary judgment on all three claims.

**1. Breach of Contract**

Galeana's breach claim is grounded in Amerifone and Beydoun's failure to provide a bid bond from a suitable financial institution in support of the bid. In attacking the breach claim, Amerifone and Beydoun focus on one issue: whether there is any evidence that the alleged breach caused any damage. Amerifone and Beydoun argue that Galeana was not harmed by the alleged breach of the contract, because the ninety million JD bid would have been rejected due to Zain's bid of 160 million JD. In support, Defendants point to an email from Fouad, the managing partner of Galeana, acknowledging that the TRC used Amerifone and MetroBeam to push Zain to a bid of

6

160 million JD. Email from Fouad, Ex. 24 to Amerifone Mot. for Sum. Judg., at 3 (cm/ecf page) (Dkt 88-25) ("[T]he TRC used both of us to push Zain to offer I [sic] higher bid outside the process (JD 160M)."). Amerifone also points to Hazim's admission that the failure to supply a proper bid bond had nothing to do with the loss of the bid. Hazim Dep., Ex. 2 to Amerifone Mot. for Sum. Judg., at 224 (Dkt. 88-3) (confirming that the chairman of the TRC had said the "offer will not be refused due to not submitting bank bond"). Additionally, Amerifone observes that the chairman of the TRC, shortly after the Commission accepted Zain's bid, left the TRC to become a consultant for Zain. Id. at 228 (Dkt. 88-3). Due to all of this, Amerifone argues that there can be no genuine dispute that the TRC was going to accept Zain's bid regardless of whether the Amerifone bid had included sufficient security.

Galeana does not respond to this argument in any meaningful way. Instead, it claims the argument is a "ploy" and ignores the many millions of dollars it spent on the process. Galeana Resp. at 11-12 (Dkt. 96).

Amerifone and Beydoun are correct in asserting that, under Michigan law,[4] Galeana bears the burden of establishing causation as part of its breach claim. See In re Brown, 342 F.3d 620, 628 (6th Cir. 2003) ("Once a valid contract has been established, a plaintiff seeking to recover on a breach of contract theory must then prove by a preponderance of the evidence the terms of the contract, that the defendant breached the terms of the contract, and that the breach[] caused the plaintiff's injury."). They are also correct that there is no genuine issue regarding Galeana's inability to establish causation. Here, Amerifone and Beydoun have presented evidence that the TRC received an offer that far exceeded Amerifone's bid; that the TRC was not concerned at all with Amerifone's failure to submit a proper bid bond; and that the TRC had merely used Galeana's

---

[4] The parties do not dispute that Michigan law applies in this diversity action.

7

bid as a way of extracting a far higher bid. Galeana has not submitted any contrary evidence. Thus, Galeana has presented no evidence that any loss it has suffered was "the direct, natural, and proximate result of the breach." Alan Custom Homes, Inc. v. Krol, 667 N.W.2d 379, 383 (Mich. Ct. App. 2003).

Because Galeana cannot show a genuine issue of material fact regarding the essential element of causation, the Court grants Amerifone and Beydoun's motion for summary judgment on the breach-of-contract claim.

### 2. Fraud

A fraud claim based on misrepresentations has six elements:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage

Bennett v. MIS Corp., 607 F.3d 1076, 1100-1101 (6th Cir. 2010).

Galeana asserts that two statements constitute fraud: Amerifone (through Oseff) writing to the TRC claiming that it has investors with the desire to invest up to $100 million, and an Amerifone promise that it would use the proceeds from its Lebanon lawsuit to fund the process of preparing the bid. Amerifone argues that Galeana cannot show that the statement in the letter was false, or that the statements about the lawsuit were made in bad faith.

First, Galeana argues that the June 26, 2012 letter, in which Oseff explained that Amerifone had several investors interested in the opportunity to invest in companies with bona fide telecommunications licenses, constituted a falsehood because investors were never "secure[]," – a term Galena does not define – but rather were only consulted about the project. See Galeana

8

Mot. for Sum. Judg. against Amerifone at 11. Galeana also argues that the statements were false, because there were never actually any investors who wanted to invest in Jordan, except an individual named Ziegler, the supposed lead investor, who was never "secured." Amerifone responds that Oseff and Beydoun testified that there were indeed multiple potential investors and that the letter in question never claimed to have investors "secured."

Galeana's fraud claim regarding this statement fails because Amerifone has presented unrebutted evidence that the statements in the letter were not false. Contrary to Galeana's contention that the letter claims that investors were "secure[]," Oseff merely wrote that "Amerifone has been in extensive discussions with numerous [] investors" in Jordan, Lebanon, and Qatar, and that a group of "United States investors have indicated that they desire to have the opportunity to invest up to USD $100,000,000 in companies with bona fide telecommunications licenses." Oseff Letter, Ex. 8 to Amerifone Mot. for Sum. Judg., at 1 (Dkt. 88-9). As is clear from the text of the letter, it merely states that Amerifone had a group of investors who <u>indicated a desire</u> to invest. Amerifone has shown this to be true, as a number of investors were interested. See Oseff Dep., Ex. 9 to Amerifone Mot. for Sum. Judg., at 28-36, 70-71 (Oseff testifying that Ziegler had a group of investors "who wanted the opportunity to invest up to 100 million dollars in telecommunications in the MENA [Middle East and North Africa] area"); Interrogatories, Ex. D to Amerifone Resp. (Dkt. 96-4) (providing a list of interested investors). Galeana has failed to rebut that evidence. Instead, Galeana misconstrues the statements made in the letter when it argues that the statements were false because Ziegler was never "secured" as an investor. Amerifone never claimed to have "secure" investors – whatever that term may mean – it only purported to have investors interested in investing in companies with bona fide telecommunications licenses. Thus, Galeana cannot succeed on its fraud claim based on the letter.

Galeana also claims fraud based on Defendants' statement that Amerifone would use the proceeds of the Lebanon lawsuit to fund the bid. Details in the record are sparse, but Galeana alleges that Amerifone, on at least one occasion, told Galeana that the bid would be partially funded once an Amerifone lawsuit in Lebanon was settled. See Beydoun Dep., Ex. 3 to Oseff Mot. for Sum. Judg. at 12 (Dkt. 83-4) (testifying that Galeana did not charge Amerifone immediately, but rather waited to collect "from our case in Lebanon"). Galeana now argues that, because the Lebanon lawsuit is still pending, Amerifone must have known that the proceeds could not have been used to fund the bid. See Galeana Mot. for Sum. Judg. against Amerifone at 11.

At the motion-to-dismiss stage, the Court determined that the allegations could bring the alleged promise of future performance within the "bad faith" exception to the false-representation prong of fraudulent misrepresentation. Galeana Telecommunications Investments, Inc. v. Amerifone Corp., 202 F. Supp. 3d 711, 728-729 (E.D. Mich. 2016); see Cook v. Little Caesars Enters., Inc., 210 F.3d 653, 658 (6th Cir. 2000) (explaining that, although an action for fraud must be based on a false statement related to a past or existing fact, a claim can be sustained if a promise of future action was made in bad faith without the intention to sustain it). Amerifone claims that Galeana still has not produced any evidence of bad faith, i.e. that Amerifone knew at the time it suggested the proceeds of the Lebanon lawsuit could fund the bid that this was actually not the case. Amerifone Resp. at 15-16 (Dkt. 95).

The Court agrees that Galeana has not provided any evidence that this alleged promise was made in bad faith. Aside from its commentary that the promise was "obviously" made in bad faith, it fails to provide actual evidence, direct or circumstantial, that Amerifone made the alleged promise without the intention of fulfilling it. See Blackward Props., LLC v. Bank of Am., 476 F. App'x 639, 643 (6th Cir. 2012) ("Because evidence of a broken promise is not evidence of fraud,

10

[Plaintiff] must show that, at the time the promise was made, [Defendant] did not intend to fulfill it.") (internal quotation marks omitted). Given that Galeana has brought forth no facts to establish bad faith, the claim cannot be sustained.

Amerifone also observes that Galeana did not rely on any promises regarding the lawsuit, pointing to emails sent by Fouad on February 15, 2013. In that email, Fouad wrote "I was not aware that Jordan funding was dependent on Lebanon claim settlement or Jordanian investors. I simply cannot be responsible for that." Email from Fouad to Oseff, Ex. 15 to Amerifone Mot. for Sum. Judg. (Dkt. 88-16). Fouad explained at his deposition that, by disclaiming responsibility, he meant that he was aware it could take months or years for the legal process to be complete. Fouad Dep., Ex. 1 to Amerifone Mot. for Sum. Judg., at 115. (Dkt. 88-2). Galeana has made no attempt to rebut the claim that it did not rely on the statements, either in its response to the summary judgment motion or in its own summary judgment motion. Because Galeana has not shown that there is a genuine issue of material fact regarding the false-statement or reliance prongs of the fraud claim related to the Lebanon lawsuits, the claim cannot survive summary judgment.

Galeana has also advanced two fraud claims against Beydoun, but the claims relate to the same supposed misrepresentations: the existence of financial backers and the Lebanon lawsuit. For the reasons discussed above, these claims cannot survive summary judgment and thus are dismissed.

**3. Concert of Action**

The third claim advanced by Galeana against Amerifone and Beydoun is concert of action. In order to prove concert of action, however, a plaintiff must show that the "defendants acted tortiously pursuant to a common design." Cousineau v. Ford Motor Co., 363 N.W.2d 721, 728

(Mich. Ct. App. 1985). Because there is no underlying tort here, there can be no concert-of-action claim.

For these reasons, Amerifone and Beydoun's motion for summary judgment is granted and the claims against these parties are dismissed.[5]

**B. Oseff Motion**

Galeana advances one fraud claim against Defendant Oseff, related to the June 26, 2012 letter that he wrote on behalf of Amerifone, as well as a concert-of-action claim. In that letter, Oseff stated that there were specific investors, but that he could not reveal their names because of confidentiality agreements. Galeana asserts that there were no actual investors ready to invest.

For the reasons stated above, Galeana's fraud claim related to the June 26, 2012 letter cannot survive. The letter only asserted that there was a group of investors who had a desire to invest in companies with bona fide telecommunications licenses, and Galeana has presented no evidence that this was not true. Further, Oseff has provided the non-disclosure agreements referenced in the letter, thus confirming that they do indeed exist. See Confidentiality Agreement, Ex. 16 to Oseff Mot. for Sum. Judg. (Dkt. 83-17).

Accordingly, the fraud claim against Oseff cannot be sustained, and with it, the concert-of-action claim fails as well. For these reasons, Oseff's motion for summary judgment is granted, and the claims against him are dismissed.

**C. FIEG Motion**

Defendants FIEG and Dalaly's motion for summary judgment seeks dismissal of Galeana's claims for fraudulent inducement, fraudulent misrepresentation, innocent misrepresentation,

---

[5] For these same reasons, Galeana's motion for summary judgment on its claims against Amerifone and Beydoun (Dkt. 85) is denied.

violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and concert of action. All require reliance on a false statement. See Bennett, 607 F.3d at 1100-1101 (fraud); Woodland Harvesting, Inc. v. Ga. Pac. Corp., 693 F.Supp.2d 732, 743 n. 12 (E.D. Mich. 2010) (innocent misrepresentation); Sec. Am. Compl. ¶ 174 (Dkt. 28) (citing FIEG and Dalaly's fraudulent representations as an element of Galeana's RICO claim).

FIEG and Dalaly argue that Galeana cannot claim reliance on any representations made: that Dalaly was a well-connected individual and that his bank, Atlantic Bank, was a "legitimate" bank that had executed multiple large-scale financial transactions as required by the bidding process. See Galeana Resp. at 4-5 (Dkt. 97). Galeana argues that it relied on Dalaly's representations and that, based on them, it believed Amerifone would have been able to provide the funds necessary to complete the project, such that Galeana did not seek funding elsewhere. See generally id. at 4-6.

Galeana's argument is belied by the record. At his deposition, Hazim, the managing director of Galeana, was asked about his interaction with Dalaly. Hazim testified that, when he met with Dalaly for the first time, he was already aware that there was a cease-and-desist order from the State of Michigan preventing Dalaly from operating Atlantic Bank. Hazim Dep., Ex. B to FIEG Resp., at 230 (Dkt. 94). Thus, Hazim's testimony was that he was already aware that any representations made by Dalaly were false at the time that the representations were made, meaning that Galeana was not entitled to rely on those statements. See Montgomery Ward & Co. v. Williams, 47 N.W.2d 607, 611 (Mich. 1951) ("[F]raud [cannot be] perpetrated upon one who has full knowledge to the contrary of a representation.").

Accordingly, Galeana cannot meet this element of its fraud claims, and, for the reasons discussed above, it also cannot satisfy the elements of its concert-of-action claim. For these reasons, FIEG and Dalaly's motion for summary judgment is granted.[6]

### D. Galeana Motion against Amerifone and Beydoun

Galeana brings a motion for summary judgment on Amerifone's counterclaim against it. Amerifone and Beydoun have counterclaimed for fraud in the inducement, alleging that Galeana principals made a number of misrepresentations to induce Amerifone to work with Galeana in pursuit of the 3G licenses in Jordan. Specially, Amerifone and Beydoun allege that Fouad, Galeana's chairman, told Amerifone and Beydoun that (i) "[Galeana] and Metrobeam were in good financial condition and had minimal debt," and (ii) "[Galeana] and Metrobeam were in good standing with the Jordanian Government." Amerifone Answer at 25-26, ¶¶ 12(a)-(b) (Dkt. 47). Galeana argues that Beydoun and Amerifone have not come forward with sufficient evidence to create an issue of fact in support of their fraud allegations on the issue of misrepresentation and reliance. See Galeana Mot. for Sum. Judg. against Amerifone at 14-15.

Amerifone and Beydoun argue that there is a genuine issue of material fact whether Galeana misrepresented its financial condition and relationship with the Jordanian government. According to Amerifone and Beydoun, Galeana suggested that it was in good financial condition and had a good relationship with Jordan, but those representations were false because MetroBeam owed millions to the TRC and never made a profit. Amerifone and Beydoun further argue that there is also an issue of fact regarding reliance, because Beydoun testified that he would not have

---

[6] For these same reasons, Galeana's motion for summary judgment on its claims against FIEG and Dalaly is denied. (Dkt. 90).

entered into the agreement had he known that Galeana and MetroBeam were in dire financial condition and owed the TRC millions of dollars.

Amerifone and Beydoun have provided evidence that these representations were false. For example, they have countered Fouad's alleged statement that Galeana was in good standing with the Jordanian government by showing that MetroBeam (owned by Galeana) owed millions to the TRC. See Financial Statements, Ex. 5 to Amerifone Resp. at 14 (Dkt. 95-6). Additionally, Amerifone and Beydoun have disputed the veracity of Fouad's alleged statement that Galeana was in good financial standing by showing that Galeana had lost 73% of its $50 million investment as of December 2011, Hazim Dep., Ex. 2 to Amerifone Resp. at 180-81 (Dkt. 95-3), and that its liabilities exceeded its assets by $10 million in 2011, Financial Statements, Ex. 4 to Amerifone Resp. at 2 (Dkt. 95-5).

Regarding reliance, Amerifone and Beydoun observe that Beydoun testified at his deposition that he would have never done business with Galeana "[i]f I knew what I know right now." Beydoun Dep., Ex. 9 to Amerifone Resp., at 36 (Dkt. 95-10). Galeana's evidence to the contrary that Amerifone had an independent auditor conducting due diligence is not persuasive, considering Hazim's deposition testimony that Galeana's financial statements were not provided to Amerifone. Hazim Dep., Ex. 2 to Amerifone Resp., at 182 (Dkt. 95-3).

For these reasons, Galeana has not met its burden of showing that there is no genuine issue of material fact regarding the material-representation, false material representation, and reliance elements of fraud in the inducement. Because Galeana has not argued that there is no genuine issue of material fact on any other elements of fraud in the inducement, Galeana's motion for summary judgment is denied.

### IV. CONCLUSION

For the foregoing reasons, the motions for summary judgment of Amerifone and Beydoun (Dkt. 88), Oseff (Dkt. 83), and Dalaly and FIEG (Dkt. 87) are granted.[7] Galeana's motions for summary judgment against Amerifone and Beydoun (Dkt. 85) and Dalaly and FIEG (Dkt. 90) are denied.[8]

The Court will conduct a status conference for counsel representing those parties remaining in the case on Monday, February 12, 2018 at 3:00 PM at the Theodore Levin U.S. Courthouse, 231 W. Lafayette Blvd., Detroit, Michigan 48226, Courtroom 252. At that time, the Court will discuss what further proceedings are required and will address the pending Amerifone motion for leave to amend counterclaim (Dkt. 78).

SO ORDERED.

Dated: January 26, 2018　　　　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　　　　　　　　　　　　　　　　　　　　　　　HON. MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[7] Because Amerifone's instant motion superseded its earlier motion for summary judgment (Dkt. 84), the earlier motion is denied as moot.

[8] Because Galeana's instant motion against FIEG superseded its earlier motion for summary judgment (Dkt. 86), the earlier motion is denied as moot.

## **CERTIFICATE OF SERVICE**

  The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 26, 2018.

               s/Marlena Williams
               MARLENA WILLIAMS
               Case Manager