UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GALEANA TELECOMMUNICATIONS
INVESTMENTS, INC.,

   Plaintiff/Counter-Defendant,

v.

AMERIFONE CORP.,

   Defendant/Counter-Plaintiff,

and

FIRST INTERNATIONAL EXCHANGE
GROUP, INC., et al.

   Defendants.
_____/

Case No. 15-cv-14095

HON. MARK A. GOLDSMITH

**OPINION & ORDER**
**DENYING PLAINTIFF GALENA'S MOTION FOR REHEARING OR**
**RECONSIDERATION (Dkt. 104)**

  This matter is before the Court on Plaintiff Galeana Telecommunications Investments, Inc.'s ("Galeana") motion for rehearing or reconsideration regarding the Court's January 26, 2018 opinion and order denying its motions for summary judgment and granting motions for summary judgment against it. Galeana Telecomms. Invs., Inc. v. Amerifone Corp., No. 15-14095, 2018 WL 572034 (E.D. Mich. Jan. 26, 2018). For the reasons that follow, the motion is denied.

**I. BACKGROUND**

  Galeana filed this suit in November 2015, asserting a breach of contract claim against Amerifone and Beydoun and various misrepresentation claims against Amerifone, Beydoun, and three other defendants – Harold Oseff, Dhafir Dalaly, and First International Exchange Group, Inc.

1

("FIEG"). In an August 2016 opinion, the Court dismissed several of the claims. See Galeana Telecommunications Investments, Inc. v. Amerifone Corp., 202 F .Supp. 3d 711 (E.D. Mich. 2016). Before the summary judgment stage of the proceedings, Galeana's only remaining claims were its breach-of-contract and fraud claims against Amerifone and Beydoun, a fraud claim against Oseff, various fraud claims against Dalaly and FIEG, and a concert-of-action claim against all parties. Also remaining was Amerifone and Beydoun's counterclaim for fraud against Galeana.

After the close of discovery, the parties filed a total of five motions for summary judgment. Amerifone and Beydoun filed a motion regarding Galeana's claims of breach of contract, fraud, and concert of action (Dkt. 88). Oseff filed a motion for summary judgment on Galeana's claims of fraud and concert of action (Dkt. 83). FIEG and Dalaly filed a motion for summary judgment regarding Galeana's fraud and concert-of-action claims (Dkt. 87). Galeana filed a summary judgment motion, both as Plaintiff and Counter-Defendant, against Amerifone and Beydoun (Dkt. 85), and filed a separate motion for summary judgment against FIEG and Dalaly (Dkt. 90).

On January 26, 2018, the Court issued an opinion regarding the motions for summary judgment. The opinion granted the motions of all Defendants – Amerifone and Beydoun, Oseff, and FIEG and Dalaly – while denying Galeana's motions both as Plaintiff and Counter-Defendant. Thus, the only remaining active claim in this case is Amerifone and Beydoun's counterclaim for fraud against Galeana. See Galeana, 2018 WL 572034.

## II. ANALYSIS

Under the Local Rules for the Eastern District of Michigan, a party bringing a motion for reconsideration "must not only demonstrate a palpable defect by which the Court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h). In the motion,

Galeana raises five supposed palpable defects with the opinion: (i) the Court misunderstood that Zain never actually bid; (ii) the Court overlooked the record regarding the nature and details of how Amerifone and Beydoun stated the funds from the Lebanon lawsuit would be used for the bidding process; (iii) the Court converted the word "secured" to "secure[]"; (iv) the Court mistakenly believed that Plaintiff knew of Dalaly's fraud before entering into the agreement; and (v) the Court did not address the second alleged misrepresentation in Amerifone and Beydoun's counterclaim. For the reasons that follow, the Court denies Galeana's motion.

**A. Zain Bid**

First, Galeana argues that the Court granted summary judgment on the misunderstanding that Zain was the highest bidder among Zain, Metrobeam, and Amerifone in the formal bidding process. Amerifone bid ninety million Jordanian Dinars ("JD") (approximately $127 million) for a telecommunications license in Jordan, while Metrobeam bid seventy million JD (approximately $99 million.) Galeana, 2018 WL 572034 at *2. As recounted in the opinion, "[u]ltimately, the TRC [Jordan's Telecommunications Regulatory Commission] awarded the license to a third provider, a company called Zain, based on its bid of 160 million JD (approximately $225 million)." Id. In the motion, Galeana argues that Zain only became involved after the bidding process was complete, and that Zain "never submitted a bid." Pl. Mot. at 2 (Dkt. 104).

Contrary to Galeana's argument, the statement in the opinion is accurate, and the Court did not misunderstand the nature of Zain's involvement. The opinion makes no reference as to whether the bid was made inside or outside the formal process. Further, the Court's characterization of Zain's "bid," which Galeana now disputes, comes directly from an email from Fouad Alaeddin, Galeana's majority owner. See 2/24/2014 Email, Ex. 24 to Amerifone Mot. for

Sum. Judg., at 3 (cm/ecf page) (Dkt 88-25) ("[T]he TRC used both of us to push Zain to offer I [sic] higher bid outside the process (JD 160M).").

Galeana also argues that the TRC was concerned with Amerifone's failure to submit a proper bid, and that the chairman of the TRC becoming a consultant for Zain is not enough evidence "to pass the threshold of a summary judgment standard." Pl. Mot. at 3. Although unstated, this appears to be an argument that there was evidence of causation sufficient to defeat summary judgment. The Court disagrees.

As to the first point, Amerifone and Beydoun submitted a letter written by Fouad Alaeddin reflecting his understanding from the TRC chairman that a bid would not be rejected due to a lack of a bank bond. See 2/20/2014 Letter, Ex. 23, Amerifone Mot. for Sum. Judg., at 2 (cm/ecf page) (Dkt. 88-24). This understanding was referenced in Beydoun's deposition, as reflected in the Court's opinion. See Galeana, 2018 WL 572034 at *3. This letter was written after the bid was rejected, and reflects Galeana's ongoing understanding that a proper bid bond would not be consequential to the TRC's decision-making. Galeana cannot disavow what its own principal believed.

Galeana observes that Beydoun testified he was given an opportunity to cure the bid by the TRC, but the Court is not persuaded that the TRC's statements in rejecting the bid prove anything. Rather, they serve the narrative that the TRC used Amerifone to get a higher bid from Zain – just as Galeana's principal believed. This conclusion is bolstered since the TRC's justifications for rejecting the bid apparently contradicted its earlier instructions to the bidders, i.e. before the bid was submitted, the parties were alerted that a bid would not be rejected for a lack of a bank bond, but that requirement was apparently enforced when the TRC rejected Amerifone's bid.

As for the chairman of the TRC becoming a consultant for Zain, Galeana is correct that that fact alone is not enough to support summary judgment. But it is circumstantial evidence supporting the view – endorsed by Galeana's principal – that the contract would have gone to Zain regardless. The combination of all this evidence is enough to support summary judgment.

Regardless, none of this changes the fact that Galeana provided no evidence to support the contention that the TRC would have given the contract to Amerifone had the bid been properly submitted. In other words, to defeat summary judgment, Galeana had to come forward with some evidence that it would have been awarded the contract, but for the breach. Galeana has, at most, shown that the bid bond was a concern of the TRC – but that falls short of demonstrating that Galeana would have won the bid, but for the bond defect. Thus, the Court denies this portion of Galeana's motion.

**B. Lebanon Lawsuit**

In its opinion, the Court dismissed Galeana's fraud claim premised on the "Lebanon lawsuit" promise because Galeana had shown no evidence of bad faith by Amerifone. See Galeana, 2018 WL 572034 at *5. Galeana claimed that Amerifone had said that the bid would be partially funded once an Amerifone lawsuit in Lebanon was settled. In the opinion, the Court said that Galeana failed to provide any actual evidence that Amerifone made the alleged promise without the intention of fulfilling it, and that details in the record were sparse regarding the promise. Galeana now says that the Court overlooked evidence in the record that Defendants knew that lawsuit would not be settled in time to provide additional funding, and that there was indeed evidence in the record regarding the nature of the Lebanon lawsuit.

As to the first point, Galeana merely makes the same argument that it made in its summary judgment brief, which is not permissible at the reconsideration stage. See E.D. Mich. L.R.

5

7.1(h)(3) ("Generally, and without restricting the Court's discretion, the Court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication."). As the Court held in its opinion, the fact that the lawsuit was still ongoing at the time of Beydoun's deposition is not evidence that Amerifone made the alleged promise without the intention of fulfilling it. See Galeana, 2018 WL 572034 at *5.

Regarding Galeana's second point, it provides two record cites that it claims provides details of the Lebanon lawsuit. The first is Fouad Alaeddin explaining that he understood that the lawsuit against Lebanon had not yet been settled, and the second is Beydoun explaining that the suit was over an unsuccessful licensing bid. These details certainly do not paint a full picture of the Lebanon lawsuit promise, and regardless were not included as cites in Galeana's initial briefing. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-1480 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact."); Fed. R. Civ. P. 56(e) (permitting a court to "consider a fact undisputed for purposes of the motion" and grant summary judgment if the movant is entitled to it based on "facts considered undisputed" if a "party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact"); Case Management Order at 5 (Dkt. 54) (requiring parties to begin summary judgment briefs with a statement of material facts that includes "specific references and citations to record evidence."). Even if these details mean that the record is not sparse, it is irrelevant to the ultimate decision of the Court, because there was still no evidence that the promise was made in bad faith. For these reasons, the Court denies this portion of Galeana's motion.

### C. "Secured" vs. "Secure[]"

Third, Galeana argues that the Court made an error in occasionally converting "secured" to "secure[]" in describing the people purportedly interested in investing in the telecommunications industry. This dispute arises out of the June 26, 2012 letter sent by Harold Oseff. Galeana argues that the change gave the term a different meaning. Even if Galeana is correct, it is of no consequence to the case. As the Court observed in the opinion, the letter "merely states that Amerifone had a group of investors who indicated a desire to invest." See Galeana, 2018 WL 572034 at *4. The letter in question does not claim to have secured investors, and thus the Court's terminology is irrelevant to the disposition of the claim. For these reasons, the Court denies the portion of Galeana's motion.

**D. Dalaly's Supposed Fraud**

Galeana next argues that the opinion reflected a mistaken belief that Galeana knew of Dalaly's fraud before entering into the agreement. In the opinion, the Court held that, because Hazim Alaeddin testified that he was already aware at the time he met Dalaly that there was a cease-and-desist order from the State of Michigan preventing Dalaly from operating Atlantic Bank, Galeana could not have reasonably relied on Dalaly's representations about his status as a well-connected individual and the legitimacy of his bank to support a fraud claim. See Galeana, 2018 WL 572034 at *6. This holding reflected Galeana's argument in its summary judgment motion, in which Galeana argued fraud based on Dalaly's representations that he was well-connected and operated a legitimate bank. See generally Galeana Mot. for Sum. Judg. against FIEG at 9-13 (Dkt. 86). Galeana now argues that it was aware of the cease-and-desist order preventing Dalaly from operating Atlantic Bank, but the Court neglected to comment on the fact that Galeana had expressed concerns about the order but had received assurances from Dalaly's attorney that the order was no longer in effect.

7

However, Galeana did not make this argument in its summary judgment briefing. In its summary judgment brief against Dalaly and FIEG, Galeana argued that Dalaly made representations regarding his operation of a legitimate bank, but that these representations were not true because it had been ordered to cease operation. Pl. Mot. for Sum. Judg. against FIEG at 9-13. The brief makes no reference to Dalaly's attorney. Galeana's response to FIEG and Dalaly's motion for summary judgment (Dkt. 97) similarly makes no reference to any reassurances or to Dalaly's attorney. "A motion for reconsideration is not a vehicle to advance positions that could have been argued earlier but were not," McDermott v. Randall S. Miller & Associates, P.C., 835 F. Supp. 2d 362, 374 (E.D. Mich. 2011), and thus Galeana's failure to raise this theory of fraud in the summary judgment briefing prevents it from raising the theory now. Accordingly, this portion of Galeana's motion is denied.

### E. Amerifone and Beydoun's Counterclaim

Finally, Galeana argues that the Court erred in not addressing whether there was any evidence of Galeana being under investigation by the Jordanian government. Galeana points out that the Counterclaim alleged two separate misrepresentations: (i) Galeana was in good financial condition and had minimal debt; and (ii) Galeana was in good standing with the Jordanian government. See Counterclaim ¶¶ 12, 16 (Dkt. 47). Galeana further notes that the Counterclaim alleged that the second misrepresentation was false because of an alleged Jordanian government investigation of Galeana. Id. ¶¶ 20-21. Galeana argues that the denial of summary judgment was erroneous because the Court did not address the absence of evidence concerning an investigation, without which the second misrepresentation supposedly could not be established.

What Galeana overlooks is that Amerifone and Beydoun argued in response to Galeana's summary judgment motion that the second misrepresentation could be established through

Galeana's heavy indebtedness to the Jordanian government. In their response, they set out both misrepresentations and then stated "[t]hese representations were false because MetroBeam owed millions to the TRC . . ." See Statement of Additional Material Facts, Resp. to Mot. for Sum. Judg. ¶¶ 17-22 (Dkt. 95); see also Resp. at 22. If Galeana had an issue with the evolving theory of the Counterclaim, the time to register an objection would have been in a reply brief – which it did not file – not in a motion for reconsideration. See McDermott, 835 F. Supp. 2d at 374 ("A motion for reconsideration is not a vehicle to advance positions that could have been argued earlier but were not"). Galeana's failure to file a reply brief amounts to a forfeiture of any objection to Amerifone and Beydoun's theory of how the second misrepresentation can be established. See United States ex rel. American Sys. Consulting, Inc. v. ManTech Advanced Sys. Int'l, 660 Fed. App'x 969, 979 (6th Cir. 2015) (finding forfeited an argument that plaintiffs did not raise in their reply brief after defendant raised an issue in its response brief).

And if Galeana had wanted to challenge the factual basis for the evolving argument, the vehicle for doing so was also by way of a reply brief. See Case Management Order at 5-6 ("If the non-moving party raises additional material facts not addressed in the moving party's Statement, the moving party must begin its reply brief with a 'Reply to Counter-statement of Material Facts,' stating which of the non-moving party's additional facts are contested."). Because Galeana did not submit a reply brief, the Court considered those facts undisputed, as permitted by rule. See Fed. R. Civ. P. 56(e) (allowing a court to "consider a fact undisputed for purposes of the motion" if a party "fails to properly address another party's assertion of fact"). Galeana may not, in a motion for reconsideration, dispute those statements for the first time.

Thus it is irrelevant that neither the summary judgment response nor the Court's opinion said anything about a Jordanian government investigation. Sufficient evidence was adduced to

forestall summary judgment regarding the second misrepresentation. For these reasons, this portion of Galeana's motion is denied.[1]

### III. CONCLUSION

For the above-stated reasons, the Court denies Galeana's motion for reconsideration (Dkt. 104).

SO ORDERED.

Dated: April 5, 2018　　　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 5, 2018.

　　　　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　　　　Case Manager

---

[1] Even if Galeana were correct about the second misrepresentation, summary judgment was still properly denied as to the first misrepresentation. Galeana points to no alleged defect in that part of the Court's analysis.